# CRAVATH

Kevin J. Orsini
korsini@cravath.com
T+1-212-474-1596
New York

March 23, 2026

Re:   *Robinhood Derivatives, LLC v. Dreitzer*, No. 25-7831
      *North American Derivatives Exchange, Inc. v. State of Nevada*, No.
      25-7187
      *KalshiEX, LLC v. Assad*, No. 25-7516

Dear Ms. Dwyer:

Robinhood submits this response to Appellees' Notice of Supplemental Authority regarding *KalshiEx LLC v. Schuler*, No. 2:25-CV-1165, 2026 WL 657004 (S.D. Ohio Mar. 9, 2026).  (25-7831-Dkt. 95.1.)

*First*, despite recognizing that interpreting the Commodity Exchange Act ("CEA") to cover sports-related event contracts was "textually permissible," the *Schuler* court incorrectly concluded such contracts are not swaps because the purported "goals" of the CEA "are better achieved when a 'swap' is understood as a transaction involving financial instruments and measures that traditionally and directly *affect commodity prices*."  2026 WL 657004, at *6 (emphasis in original).  The court manufactured these limitations out of whole cloth—the CEA's "swap" definition requires neither

**NEW YORK**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
T+1-212-474-1000
F+1-212-474-3700

**LONDON**
100 Cheapside
London, EC2V 6DT
T+44-20-7453-1000
F+44-20-7860-1150

**WASHINGTON, D.C.**
1601 K Street NW
Washington, D.C. 20006
T+1-202-869-7700
F+1-202-869-7600

CRAVATH, SWAINE & MOORE LLP

underlying "financial instruments" nor "measures that traditionally and directly affect commodity prices." Rather, it broadly encompasses all contracts providing for payment dependent on the "occurrence . . . of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii). The court also failed to consider that sports-related event contracts are "option(s)" and transactions in "excluded commodities." *Id*. § 2(a)(1)(A).

*Second*, the court disregarded that the CEA's grant of "exclusive jurisdiction" is an express preemption provision, *BNSF Ry. Co. v. Cal. Dep't of Tax & Fee Admin.*, 904 F.3d 755, 765-66 (9th Cir. 2018), and thus wrongly applied a presumption against preemption, which taints its entire preemption analysis, *Schuler*, 2026 WL 657004, at *7-8 & n.7. As to field preemption, the court incorrectly defined the relevant field as "state sports gambling laws," *id*. at *8, rather than the regulation of trading on designated contract markets ("DCMs")—the field Congress actually occupied. *See Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 491 (1987). As to conflict preemption, the court found that Kalshi offered only "its own *ipse dixit*" views on the impossibility for DCMs to comply with state gambling laws and the CFTC's impartial access requirements (25-7831-Dkt. 95.1 at 1-2), but the CFTC has explained in this appeal that a DCM "cannot fulfill its federal mandate to

provide impartial national access" if individual states can decide which contracts to allow (25-7187-Dkt. 38.2 at 26–27).

Respectfully submitted,

*/s/ Kevin J. Orsini*
Kevin J. Orsini

Molly Dwyer, Clerk of Court
United States Court of Appeals for the Ninth Circuit
95 Seventh Street
San Francisco, CA 94103

VIA ACMS

Copies to:

Aaron D. Ford, Attorney General
Jessica E. Whelan
Sabrena K. Clinton
Office of the Attorney General
1 State of Nevada Way, Suite 100
Las Vegas, NV 89119

Ryan A. Andersen
Mark M. Weisenmiller
Andersen Beede Weisenmiller
3199 E Warm Springs Rd., Suite 400
Las Vegas, NV 89120

VIA ACMS

Word Count: 348

3